IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL E. WILLIAMS, *Plaintiff* | : : : | CIVIL ACTION |
| v. | : : | |
| CITY OF PHILADELPHIA OFFICE OF FLEET MANAGEMENT, *Defendant* | : : : : | No. 18-3875 |

# MEMORANDUM

PRATTER, J.                                                                             APRIL ___, 2020

Michael Williams reported to the City of Philadelphia Office of Fleet Management's ("the OFM") Human Resources Department that his co-worker used a discriminatory racial epithet while talking to him. Shortly thereafter, the OFM suspended Mr. Williams for a day without pay and transferred him to a different workplace location where Mr. Williams claims to have suffered additional retaliatory acts. Mr. Williams sued the OFM for maintaining a hostile work environment and for retaliation. The OFM moves for summary judgment on all claims.

The Court denies the motion for summary judgment for the reasons set out below.

## BACKGROUND

The OFM is responsible for repairing the City's automobiles. Mr. Williams began working for the OFM in September 2014 as an Auto Helper. Mr. Williams remains employed by the OFM, currently as an Automotive Maintenance Technician.

Mr. Williams was first assigned to Shop 241 where he worked on tires and assisted with road service. Mr. Williams was one of approximately six employees at Shop 241. One of Mr. Williams' co-workers, Frank Peters, called Mr. Williams the "n-word" while at work. *See* Williams Dep. 24:2–4 ("[Mr. Peters] put the lock on the gate and told me, I would never leave a

1

['n-word'] hanging, like, to my face."). Mr. Williams never heard Mr. Peters use racially charged language on any other occasion.

In addition to Mr. Peters' use of this racial epithet, Mr. Williams claims that Mr. Peters walked up behind him and threw a tire hook at him, and that Mr. Peters repeatedly took clothes from Mr. Williams' work truck and set them on the floor. Mr. Williams reported Mr. Peters' behavior to his foreman. He did not report the behavior to the supervisor of Shop 241.

Eventually, an ongoing situation between Mr. Williams and Mr. Peters brought City of Philadelphia Human Resources employee Marcia Miller to Shop 241 for an investigation in September 2015. Both Mr. Williams and Mr. Peters were counseled and disciplined. During this investigation, Mr. Williams informed Human Resources that Mr. Peters had used the "n-word" while speaking to him. The OFM claims that this was the first time that Human Resources was made aware of this event. Mr. Williams claims that he had attempted earlier to report this harassment to his foreman, which is what Mr. Williams understood to be the protocol.

According to Human Resources, because of Mr. Williams' argumentative and aggressive behavior and the ongoing issues with Mr. Peters, Mr. Williams was suspended for one day and ordered to attend anger management classes. Mr. Peters was suspended for two days for his use of inappropriate language. That same month, Deputy Commissioner for Operations for the OFM Joseph Rosati was made aware of a verbal altercation between Mr. Williams and Mr. Peters. Mr. Rosati made the decision to separate Mr. Williams and Mr. Peters and transferred Mr. Williams from Shop 241 to Shop 258. Mr. Rosati claims that he would have transferred Mr. Williams based on the ongoing workplace disruption without consideration of Mr. Williams having reported Mr. Peters' inappropriate language.

The OFM claims that Shop 258 is a desirable work location because employees can work on whole vehicles rather than just tires, giving them valuable experience and qualifications for

promotions. Mr. Williams claims that he did not want to transfer to Shop 258 because employees at Shop 258 do not have the opportunity to work as much overtime as at Shop 241, and Mr. Williams was already eligible and scheduled for a promotion at the time that Mr. Peters used inappropriate language towards him. Mr. Williams claims that his suspension and transfer were in retaliation for reporting Mr. Peters.

Mr. Williams alleges that he suffered further discriminatory actions following his transfer to Shop 258. He claims that he was forced to wash cars and sweep floors rather than work as a technician, even though no one at Shop 258 had ever been assigned to wash cars and sweep floors previously. Mr. Williams also claims that he was denied overtime work during the papal visit in September 2015 while every other employee at Shop 258 was permitted to work overtime. The OFM claims that Mr. Williams was offered the opportunity to work overtime but declined. The individuals who allegedly ordered Mr. Williams to wash cars and sweep floors and denied him overtime were Dave Costello, Stephen Consello,[1] and John McGinness.

Mr. Williams was suspended again for two days in October 2015 for making disrespectful and threatening remarks to his supervisor. Mr. Williams signed a last-chance agreement stating that he had violated the Workplace Violence Policy and that the OFM had just cause to terminate him. The agreement also stated that the OFM would rescind Mr. Williams' offer of promotion and would consider him for the promotion a year later if he did not incur any other disciplinary actions. Mr. Williams claims that he was pressured into signing the last-chance agreement because his attorney led him to believe that he would be fired if he did not sign it.

Mr. Williams filed a charge of discrimination with the EEOC in December 2015. He was later promoted to Automotive Maintenance Technician in July 2017. In June 2018, the EEOC issued Mr. Williams a right-to-sue letter.

---

[1] The similarity between Mr. Costello's and Mr. Consello's names appears to be coincidental.

In September 2018, the OFM accused Mr. Williams of misconduct related to an incident with a police officer at the shop and held a formal disciplinary hearing. The OFM ultimately decided not to discipline Mr. Williams. Mr. Williams claims that the OFM's accusations were in retaliation for his earlier reporting of Mr. Peters' use of inappropriate language and his filing a charge with the EEOC. The OFM claims that the ultimate decisionmaker, Joe Antonelli, did not know about Mr. Williams' protected activity. Mr. Williams did not file a subsequent charge of discrimination with the EEOC related to this alleged retaliation.

## LEGAL STANDARD

A court can properly grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of

4

evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

The OFM moves for summary judgment on Mr. Williams' hostile work environment and retaliation claims. Because there is arguably a dispute of fact as to the reasonableness of the OFM's response to Mr. Williams' complaint of harassment, and because there is some evidence that the reasons the OFM suspended and transferred Mr. Williams are pretext for retaliation, the Court denies the motion for summary judgment. Each claim is addressed in turn.

### I. Mr. Williams' Hostile Work Environment Claim

To prevail on a race-based hostile work environment claim, Mr. Williams must show that "1) the employee suffered intentional discrimination because of his/her race, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability meaning the employer is responsible." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)).

5

The OFM argues that summary judgment should be entered on Mr. Williams' hostile work environment claim because (1) the alleged conduct was not severe or pervasive, and (2) there is no *respondeat superior* liability.

A.  **Whether the Alleged Discrimination was Severe or Pervasive**

In determining whether conduct is sufficiently hostile to support a claim, a court must consider the totality of the circumstances, which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005).

The OFM claims that a single use of the "n-word," although morally repulsive, is not sufficiently severe to maintain a hostile work environment claim. In support of its argument, the OFM cites *King v. City of Philadelphia*, 66 F. App'x. 300 (3d Cir. 2003), an unpublished opinion in which the Third Circuit Court of Appeals determined that a single use of the "n-word" did not demonstrate a pervasive atmosphere of harassment. However, the Third Circuit Court of Appeals has rejected a defendant's reliance on *King* in a case about a single use of the "n-word" before. *See Castleberry*, 863 F.3d at 265 ("Likewise, Defendants' attempted comparisons to nonbinding district court and unpublished Third Circuit opinions are of no help either. *See, e.g., King v. City of Phila.*, 66 Fed. Appx. 300, 303 (3d Cir. 2003) (although a fired police officer was called the 'n-word,' and for that reason we did in fact determine he 'had established a prima facie case,' defendants carried their burden under the McDonnell-Douglas framework of providing evidence of legitimate, nondiscriminatory reasons for his termination)."). The Third Circuit Court of Appeals has also explained:

> [O]ther Circuits have similarly held that an extreme isolated act of discrimination can create a hostile work environment. *See, e.g., Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 268 (4th Cir. 2015) (en banc) ("[W]e underscore the Supreme Court's pronouncement in *Faragher* . . . , that an isolated incident of harassment, if

6

extremely serious, can create a hostile work environment."); *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993) ("Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as [the "n-word"] by a supervisor in the presence of his subordinates . . . [that] impacts the work environment [ ] severely . . . .") (quotation omitted); *Adams v. Austal, U.S.A., LLC*, 754 F.3d 1240, 1254 (11th Cir. 2014) (although a racially offensive carving on a workplace wall "was an isolated act, it was severe" enough that a "reasonable jury could find that [plaintiff's] work environment was objectively hostile"); *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) ("This single incident [of using the "n-word"] might well have been sufficient to establish a hostile work environment.").

*Id.* (alterations in original).

Under this instruction, a single use of the "n-word" may be enough to establish a hostile work environment. In light of the severe nature of even a single use of the term, and considering the context during which it was used by the defendant's white co-worker, the Court finds that Mr. Williams' has identified just enough evidence of severe discrimination for his hostile work environment claim to survive the motion for summary judgment. The question that remains is whether Mr. Williams has also identified evidence of *respondeat superior* liability.

### B. Whether *Respondeat Superior* Liability Exists

"The basis of an employer's liability for hostile environment [race] harassment depends on whether the harasser is the victim's supervisor or merely a coworker." *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citing *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998)). "When a harasser is a co-worker or other non-supervisor, employer liability attaches 'only if the employer failed to provide a reasonable avenue for complaint, or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action.'" *Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639, 654 (E.D. Pa. 2012) (quoting *Huston*, 568 F.3d at 104), *aff'd*, 565 F. App'x 88 (3d Cir. 2014). "An employer's remedial action is adequate 'if it is reasonably calculated to

prevent further harassment.'" *Huston*, 568 F.3d at 110 (quoting *Knabe v. Boury Corp.*, 114 F.3d 407, 412 n.8 (3d Cir. 1997)).

Here, the OFM claims that it was not negligent because Mr. Williams was separated from his alleged harasser, Mr. Peters, within days of reporting the harassment; Mr. Peters was disciplined; and the harassment stopped once Mr. Williams was transferred. Therefore, the OFM argues that its remedial action was reasonably calculated to prevent further harassment and did prevent further harassment.

Mr. Williams responds that a rational fact finder could conclude that the OFM's remedial measure of transferring Mr. Williams rather than Mr. Peters was not adequate because the transfer subjected Mr. Williams to additional harassment at Shop 258 and forced him to be denied overtime. However, an employer's remedial action need only be reasonably calculated to prevent further harassment. There is no evidence that the OFM would have had any reason to think or know that transferring Mr. Williams to another shop would result in additional harassment from different employees who were not Mr. Peters. Nonetheless, Mr. Williams' claim hostile work environment survives the motion for summary judgment because, as explained below, Mr. Williams has managed to identify enough evidence in support of his retaliation claim for it to also survive, and one of the alleged retaliatory acts in question is the transfer to Shop 258 itself. If a jury were to find that the OFM transferred Mr. Williams for retaliatory reasons, then that same retaliatory transfer could hardly be said to constitute an "appropriate remedial action."

For these reasons, the Court denies the motion for summary judgment on Mr. Williams' hostile work environment claim.

## II. Mr. Williams' Retaliation Claim

Absent direct evidence of retaliation (which, in the great majority of cases, is decidedly hard to come by), a plaintiff may prove retaliation "by applying the familiar *McDonnell Douglas*

8

burden-shifting framework."[2] *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (citing *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 198–99 (3d Cir. 2015)).

### A. Mr. Williams' *Prima Facie* Case

"To establish a *prima facie* case of retaliation under the anti-discrimination statutes, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567–68 (3d Cir. 2002) (citation and quotations omitted). "For an employer's action to satisfy the second prong of a prima facie case of retaliation, the plaintiff 'must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Daniels*, 776 F.3d at 195 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Here, Mr. Williams claims that the following actions were taken in retaliation for him reporting Mr. Peters: (1) being suspended for one day in September 2015; (2) being transferred to Shop 258 in September 2015; (3) being forced to wash cars and sweep floors once he arrived at Shop 258; (4) being denied overtime at Shop 258 during the papal visit in September 2015; (5) being suspended for two days in October 2015; and (6) being falsely accused of being in a verbal altercation with a police officer in September 2018.

The OFM concedes that there is a factual dispute as to whether Mr. Williams engaged in protected activity and whether the transfer to Shop 258 was a materially adverse action. The

---

[2] First, the plaintiff must establish a *prima facie* case of retaliation. *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant "to provide a legitimate non-retaliatory reason for its conduct." *Id.* Finally, if the defendant articulates a nondiscriminatory reason for its adverse actions, the burden shifts back to the plaintiff to show that the employer's proffered explanation is pretextual. *Id.*

additional retaliatory acts Mr. Williams alleges also constitute adverse actions because they could dissuade a reasonable worker from making or supporting a charge of discrimination. Therefore, whether Mr. Williams can make out his *prima facie* case will turn on causation.

"A plaintiff may establish a causal connection based on 'an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action,' 'a pattern of antagonism coupled with timing,' or 'evidence gleaned from the record as a whole.'" *Macknet v. Univ. of Pa.*, 738 F. App'x 52, 56 (3d Cir. 2018) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). A plaintiff cannot establish a causal connection "without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted." *Daniels*, 776 F.3d at 196.

The Court addresses the issue of causation for each alleged retaliatory act in turn.

### 1. *September 2015 Suspension*

Mr. Williams claims that after he reported Mr. Peters' use of the "n-word" to Human Resources, a few days later Human Resources investigator Marcia Miller recommended suspending Mr. Williams, and he was in fact suspended for one day without pay. Ms. Miller was aware that Mr. Williams had reported Mr. Peters' behavior, and she directed that Mr. Williams be suspended within days of his complaint. This timing is evidence of a causal connection because there is a suggestive temporal proximity between Mr. Williams reporting Mr. Peters' harassment and Mr. Williams' suspension. *See Abdul-Latif v. Cty. of Lancaster*, 990 F. Supp. 2d 517, 530 (E.D. Pa. 2014) ("Ordinarily, a period of less than one week is unusually suggestive.") (citation omitted).

Because Mr. Williams has established that Ms. Miller knew of his protected activity and suspended him just days after he engaged in that protected activity, Mr. Williams can make out a *prima facie* case of retaliation for being suspended for one day in September 2015.

## 2. Transfer to Shop 258

At the same time that Mr. Williams was suspended, the OFM made the decision to transfer him from Shop 241 to Shop 258, a location that Mr. Williams describes as less advantageous. Mr. Williams claims that this was additional retaliation for his reporting Mr. Peters. Because the timing of this transfer is likewise unusually suggestive, Mr. Williams can make out a *prima facie* case of retaliation for being transferred to Shop 258.

## 3. Being Forced to Wash Cars and Sweep Floors

Once Mr. Williams arrived at Shop 258, he claims that he was forced to wash cars and sweep floors. The OFM and Mr. Williams have conflicting accounts as to who forced Mr. Williams to do these tasks: the OFM says it was David Costello, and Mr. Williams says it was Stephen Consello and John McGinness. Regardless of who it may have been, there is no evidence in the record that Mr. Costello or Mr. McGinness had any knowledge that Mr. Williams had engaged in protected activity by reporting Mr. Peters. As for Mr. Consello, Mr. Williams claims that Mr. Consello knew about Mr. Williams' protected activity because Mr. Consello was in the room when Mr. Williams called Ms. Miller of Human Resources to report that he was washing cars and sweeping floors. However, this evidence is not probative as to whether Mr. Consello had any knowledge that Mr. Williams earlier had reported Mr. Peters' conduct, which is the relevant protected activity. Furthermore, when asked at his deposition how Mr. Consello knew that Mr. Williams had reported Mr. Peters, Mr. Williams responded only that Mr. Consello knew that Mr. Williams had been transferred, written up, and suspended because of "a problem," and that Mr. Consello had access to Mr. Williams' suspension form. However, Mr. Williams' suspension form does not reference Mr. Williams' protected activity. Finally, in an effort to establish Mr. Consello's knowledge of Mr. Williams' protected activity, Mr. Williams claims that *Mr. Peters'* disciplinary report included a reference to his use of the "n-word." However, there is no evidence

that anyone at Shop 258 had access to or had ever seen Mr. Peters' disciplinary report, or connected the two men.

Because Mr. Williams cannot prove that any of the alleged retaliatory actors knew that he had engaged in protected activity and reported Mr. Peters, Mr. Williams cannot make out a *prima facie* case of retaliation for being forced to wash cars and sweep floors.

### 4. *Being Denied Overtime During the Papal Visit*

Mr. Williams claims that Stephen Consello also denied him overtime during the September 2015 papal visit. As just described, there is no evidence that Mr. Consello knew about Mr. Williams' protected activity. Furthermore, when Mr. Williams was asked why he thought Mr. Consello denied him overtime, he said, "I believe it was something personal. . . . I don't understand the reason why. I don't know the reason why. I just know it was done." Williams Dep. 51:18–52:2.

Mr. Williams cannot make out a *prima facie* case of retaliation for being denied overtime.

### 5. *October 2015 Suspension*

Mr. Williams also claims that David Consello suspended him for no reason and that everything in his suspension report was false. However, as explained, there is no evidence that Mr. Consello knew about Mr. Williams' protected activity. Mr. Williams cannot make out a *prima facie* case of retaliation for being suspended for two days in October 2015.

### 6. *September 2018 False Accusation*

Finally, Mr. Williams claims that he was falsely accused (although never disciplined) of having an altercation with a police officer in the shop. This claim suffers from multiple insufficiencies.

First, this allegedly false accusation occurred after Mr. Williams had filed his complaint related to his other claims with the EEOC and received his right-to-sue letter. A complainant must file a new EEOC complaint when alleging "a discrete act that occurred after [the complainant] had

received her right-to-sue letter from the EEOC on her earlier claim." *Green v. Postmaster Gen. of U.S.*, 437 F. App'x 174, 178 (3d Cir. 2011). A false accusation is a discrete act. *See O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (including "wrongful accusation" in a "non-exhaustive list of discrete acts"). Therefore, because the OFM allegedly falsely accused Mr. Williams after Mr. Williams had received his right-to-sue letter from the EEOC regarding his other claims, Mr. Williams needed to file a new EEOC complaint. He did not do so, making this claim unexhausted.

Second, even if this claim were exhausted, there is no causation based on temporal proximity because there is a three-year gap between Mr. Williams' protected activity and this accusation. Third, there is no evidence that the actor in question, Joe Antonelli, knew that Mr. Williams had reported Mr. Peters or filed a charge with the EEOC. *See* Williams Dep. 79:6–10 ("Q. Okay. Do you believe that Joe did that because of your complaint to the EOC [sic]? A. I don't know? Q. Why do you think Joe did it? A. Have no idea.").

For these reasons, Mr. Williams cannot make out a *prima facie* case of retaliation for being accused of an altercation with a police officer in September 2018.

### B. The OFM's Non-Discriminatory Reasons

Because Mr. Williams has identified evidence that supports his *prima facie* case of retaliation for his one-day suspension and subsequent transfer to Shop 258 in September 2015, the burden shifts to the OFM to articulate a legitimate, nondiscriminatory reason for its actions.

The OFM states that Mr. Williams was suspended for one day for being argumentative and aggressive towards Mr. Peters and yelling at Mr. Peters immediately after Mr. Williams was advised to refrain from arguing with Mr. Peters. Mr. Peters was also suspended and was suspended for two days. The OFM points out that Mr. Williams, who reported discrimination, was given a shorter suspension for the same incident than Mr. Peters, who did not report discrimination.

Regarding the transfer, the OFM claims that Mr. Williams was transferred from Shop 258 after Deputy Commissioner Joseph Rosati was made aware that Mr. Williams was involved in a verbal altercation that led to a workplace disruption. According to the OFM, Mr. Rosati has the authority to transfer employees for any reason and made the decision to transfer Mr. Williams to separate Mr. Williams and Mr. Peters to avoid any future workplace disturbances. Mr. Rosati asserts that he would have made the decision to transfer Mr. Williams even if Mr. Williams had not reported Mr. Peters' use of a racial epithet.

The OFM has met its light burden to produce nonretaliatory reasons for Mr. Williams' suspension and transfer, placing the burden back on Mr. Williams to produce evidence that those reasons are pretext for retaliation.

### C. Mr. Williams' Evidence of Pretext

Mr. Williams' evidence of pretext need not be overwhelming. Rather, to survive a summary judgment motion, a plaintiff need only present evidence from which "a factfinder *could* reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Burton v. Teleflex, Inc.*, 707 F.3d 417, 427 (3d Cir. 2013) (emphasis added) (quoting *Fuentes*, 32 F.3d at 764). Mr. Williams must "demonstrate 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' from which a reasonable juror could conclude that the [OFM's] explanation is 'unworthy of credence, and hence infer that the employer did not act for the asserted non-retaliatory reasons.'" *Carvalho-Grevious*, 851 F.3d at 262 (quoting *Daniels*, 776 F.3d at 199).

Here, after Mr. Williams reported Mr. Peters for his use of the "n-word," it was Mr. Williams rather than Mr. Peters who the OFM transferred. A reasonable juror could conclude that the OFM responded more negatively to Mr. Williams than it did to the alleged bad actor, Mr.

14

Peters. This difference in treatment could lead the same reasonable juror to conclude that the OFM's explanation for Mr. Williams' transfer is not credible, and finding this explanation not credible, disbelieve the OFM's explanation for Mr. Williams' suspension as well.

The summary judgment standard, in which the evidence is to be interpreted in the light most favorable to the plaintiff, is "applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Stewart v. Rutgers State Univ.*, 120 F.3d 426, 431 (3d Cir. 1997). Viewing the body of evidence in this case in the light most favorable to Mr. Williams, a reasonable juror could conclude that the OFM's reasons for suspending and transferring him were not believable and were pretext for retaliation.

## CONCLUSION

For the foregoing reasons, the Court denies the motion for summary judgment. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

15